Good afternoon, Your Honors. Michael Kodner for the Petitioner, Francisco Vidal Moreno. I would ask to reserve one minute for rebuttal. The United States Supreme Court in Woodbury v. INS had made it very clear that the burden of proof is on the government to prove removability by clear, unequivocal, and convincing evidence. However, in a situation such as Petitioner, born abroad, a rebuttable presumption of alienage arises and the burden of proof temporarily shifts over. If the deportee, such as Petitioner in this case, can produce credible evidence in support of a derivative citizenship claim, the initial burden upon the government to prove removability by convincing evidence comes back into play. The law in which to establish a derivative citizenship in this instance is that which was in play when Petitioner was born. In this case, it would have been in 1970. Several elements were required, one being United States citizen parent, one being parentage to that parent, and the most important, which is an issue in this case, is physical presence by the United States citizen parent for 10 years, five of which are after the age of 14. So we're dealing with a time period between 14 and when Petitioner was born in 1970. Here, parentage is not in dispute, and the two true general issues, therefore, are whether the Petitioner was able to rebut the presumption of alienage, and two, whether in the alternative the Petitioner can surpass the summary judgment standard and is entitled to an evidentiary hearing before the district court on the derivative citizenship claim. Counsel, we know from her trips back to Mexico to have children that she was in Mexico a considerable amount of time, and we know that she basically couldn't remember where she lived during the 10 years needed. Why isn't that enough? Why is it not enough to meet the burden for the government's burden or to meet? Right, under our standard of review. I do not believe it's enough because I think that this is a rare issue in the fact of the illiteracy of the mother. Let me ask you about illiteracy. I remember when I was illiterate when I was three, four years old, and I remember when my children were, and what you do is teach little kids where they live so that if they need help getting home, they can. Now, I don't know any illiterate adults, and I never have, I don't think, so maybe it's different, but I would have thought even illiterate people would memorize where they lived. Well, Your Honor. Same reason, so they can get there. Your Honor, I would respond to that and say that she was able to identify a couple things from her childhood that would go towards rebutting that statement. She was able to recall picking carrots and celeries in the fields in a close-knit community in the fields. She's dealing with most likely Mexican parents, at least one Mexican parent, and I don't think the concept of teaching where you have your daughter go out of the farm comes into play. She was in a close community where I don't think that that became relevant. And secondly, if she has the names of streets that are in Brawley. Do you have some auntie walking her home, and the auntie says, where do you live, child? Well, I think that the record suggested from the mother's testimony that she rarely even left, and when she did, she went with the parents. So I think that she was never really in the position to have to remember exactly where she left. She was an adult for much of this time. She would never have to get in a – I imagine she was probably too poor to have a car a lot of that time, though she didn't say, but if that's so, there might be occasions when she'd need a cab to take her home. You know what, Your Honor? I don't think that that was developed properly on cross – I mean, on direct and on cross, which is what goes to the possibility of this court sending this case back for an evidentiary hearing to the district court. The standard there is all we have to prove is that it's a non-frivolous claim to derivative citizenship in this instance. The traditional principles of summary judgment apply, and it's a lower standard than the initial burden of proof. In order to do that, do we have to conclude that there's – that substantial evidence does not support the decision here? I would say, Your Honor, that having to prove that there's a non-frivolous claim is lesser – is a lesser standard than the standard that you're requiring. I think all we have to prove is the general issue of trial of fact exists. The fact that that – the list that was submitted, which did list all the residences, although it was afterwards, after the individual merits hearing, which certainly was allowed by the I.J. The I.J. had problems with the foundation of it, but I think that, number one, that previous attorney was disbarred. I don't know how important that is. But secondly, that is certainly an issue that could be developed at an evidentiary hearing. And I think that the fact that she did directly testify that she was an El Centro from ages 17 to 21, considering the fact also that she had one – at least one of the five years in 69, which was through the taxes. And then also, regardless of what the I.J. said about there not being the brother's citizenship claim, getting it through the mother's, regardless of the I.J. saying that that's not important, there's evidence – there's a case law in the Ninth Circuit which indicates that any acts of the Attorney General are probative evidence. That is important in this instance because – But a different standard is applicable to the brother. Yes, Your Honor. But the case law in the Ninth Circuit also suggests that any act by the Attorney General and granting a citizenship claim is an act of the Attorney General is probative evidence in itself. And if you could follow me for a second, the I.J. said that it was irrelevant what happened with the brother. I would submit that it is relevant because for that brother to get that citizenship claim, he had to have – the mother had to have some sort of presence to get that in terms of the statute that was in effect at the time. For one year anyway. One year. And if you add that to the one year that we had from the 1969 taxes, we only have three years left to go. And to prove that, I don't think that that would be a difficult situation, especially if that list that was submitted that the I.J. had foundation problems with were to be proven and developed further at an evidentiary hearing. What he said about that list was that it was provided without any foundation as to how those addresses were gathered or by whom they were gathered given that the mother was unable to remember those same addresses. That's not just a technical foundation problem. That's him saying, I have no idea what these addresses mean. Yes, Your Honor. I would say that would go to the general sophistication of the petitioner's mother. No, it goes to whether that list is made up or whether somebody else not under oath is suggesting it. Your Honor, I fully understand that it was not properly – the foundation was not properly laid at the individual merits hearing. But what I would say is that if it went back to the district court, I think that this list suggests that there's a tribal issue of fact. I mean, that's a lot to come up with and a lot to fabricate to come up with in a situation like that. And I think that that could be developed at an evidentiary hearing before the district court. And if you have that into what we previously spoke of, of the two certifiable years that we have, there's only three years to go. And secondly, we also have that the brother did go to – there's evidence to suggest that the brother did go to school as a result of the citizenship papers. It further suggests that the mother was here most likely during that time to watch her son go to school. I think that that's another issue that can be developed at an evidentiary hearing. She had an evidentiary hearing. Yes, Your Honor. The way that I read the cases is that if we can prove a non-frivolous claim of derivative citizenship, and the I.J. said that she was credible overall, we cannot lose sight of the fact that – He didn't think she was lying. He thought she just had no idea where she lived. Well, I would say, Your Honor, that either she's lying or she's not. And if she's telling the court – No, you can be not lying but ignorant of the truth. Your Honor, I would say that she testified that she was living in El Centro from 17 to 21. If you were to take the fact that direct credible evidence were to prove that, I think it would go certainly towards proving there's a non-frivolous claim of derivative citizenship. Save your time whenever you want. I would reserve the rest for rebuttal. Thank you. Good afternoon, Your Honors. My name is Carol Federighi. I represent Respondent Alberto Gonzalez in this matter. Your Honors, in a case where the petitioner raises a claim of citizenship, he has the burden of proof by a preponderance of evidence to show that he's entitled to citizenship. In citizenship cases where the issue comes before the Court of Appeals, the statute says that first the court must determine if there's a genuine issue of material fact. If one does not exist, then the court is to decide the case. In doing so, it should defer to the board's factual findings as conclusive unless the contrary result is compelled, as that's the substantial evidence standard set forth in the statute. So really, in this case, the question boils down to, is there a genuine issue of material fact concerning Mr. Vidal's mother's citizenship, or actually concerning her residency in the United States? As the counsel pointed out, he needs to have shown that she resided in the United States for five years, between the time she was 14, which is 1950, and the time that Mr. Vidal was born, which is 1970. During her testimony, she did not testify unequivocally that she was president in the United States for that period of time. In fact, her testimony was, as Your Honors pointed out, very vague and conclusive, and she couldn't seem to remember where she was, and she kept sort of internally contradicting herself. She then submitted, very late in the game, a list of residences that purports to say- Was that after the close of evidence, or what? It was after the hearing. It was several months after the hearing, though the judge had left it open to accept submissions. This was a submission that he had- Mr. Vidal had- was trying to get together to submit to the State Department to get a passport, to see if the State Department would conclude that he was a citizen. So he did submit that later on, but after the actual live testimony had closed. So the question is, does this late submitted list of residences, does that create a genuine issue of material fact here? And I submit it does not. First, in light of Ms. Vidal's- I'm not sure if her last name was Vidal, so I'll just call her the mother's testimony. She herself couldn't remember, when she was testifying, she couldn't remember the addresses of any place that she lived. And then all of a sudden, here comes a list with the addresses. Counsel even now is saying she was illiterate, so she couldn't remember the addresses because of that. So that raises the question of, well, who came up with these addresses? I stumbled on that when I prepared this case. I mean, I can still remember my address when I was 2, 3, 4 years old and started walking around the Bronx by myself. What does illiteracy have to do with knowing your address? I don't think it has anything to do with it. Were there questions about the taxi cabs? I didn't read the whole transcript carefully. Were there questions that would explore that? Not about whether she had to take taxi cabs or why didn't she remember her address. There were questions about, did she go to church? Were there any other activities that could pin down her whereabouts in a specific time frame and she couldn't really remember? Or she said she didn't go to church and she didn't go to school, so there would be no records or confirmation from external evidence of where she was during this time period. There was no detailed exploration of why didn't she remember. I agree with you that people... That's what I'm looking for. I mean, you don't need external evidence. Most people would have a hard time coming up with external evidence unless they had old letters that they'd saved or something, of where they lived for a short time many years ago, but they'd remember. Yes, no, I agree. And I agree that in preliterate societies, there's a very strong oral tradition and people are taught to memorize things and they memorize whole sagas and epics. And certainly children are taught to memorize their addresses and phone numbers, et cetera, so that they know how to get home if they get lost. So I don't believe that her illiteracy would excuse her not knowing her address. And in fact, we don't even need to know a specific address. We just want to know, was she in the U.S. or was she in Mexico? And even on that, she was very vague and inconclusive in her testimony. She kept saying, well, then I was with my parents, but no, I was just visiting them, but no, I lived with them when I met my husband in 1950. So I think one key fact to keep in mind here is at the beginning of this time period in 1950, she claimed that she was living with her parents in Mexico, and that's when she met her husband. And then in 1951, she also at one point said she gave birth to her first son, Jose, in Mexico, and she said that she was living there then. If the court looks at the list of addresses that she submitted, it does say that in 1950, she claims to have been living in the U.S., on the Tamarack Ranch in the U.S. So that even contradicts her testimony. So I think that's one evidence or one reason why the list, the written list, should be given very little weight, if no weight at all on that, and also then the lack of foundation argument that Your Honor pointed out. Now, consider how the list would be considered if it had been submitted before or contemporaneously with her testimony. Then they would have had a chance to explore the verities of the list by examining her. And if her testimony remained the same as it was, the list would have been thrown out as irrelevant and not of no weight whatsoever. I think it's even less probative when it was submitted at such a late date, but they'd already had a chance to examine her testimony and to determine, to explore whether she could remember her addresses and she couldn't. So that raises the question of why could she all of a sudden remember them a few months later. In the Augusta case, which I cited in my 28J letter, the court did find a material issue of fact and ordered a de novo hearing before the district court. Because in that case, the citizenship claim of the alien or alleged citizen was supported by testimony of three witnesses. So there was conflicting testimony in that case, but there were witnesses on each side, basically, or documents on the government side and witnesses, live witnesses on the alien side. Here we don't have any live testimony that she was president in the United States for five years during the relevant time period. Her testimony does not state that unequivocally. She also didn't submit any supporting documentation. Your Honor suggested that. The son testified. Did he testify as to what residence he relied on to get his citizenship? No, he was under a different statute, as counsel pointed out, and he only had to show that his mother was president in the U.S. for one year at any time. There wasn't the requirement that it be one year after age 14. And we don't dispute that she probably was president in the United States when she was a child. So the record doesn't reflect what year he relied on, but there was no requirement that he show a one-year presence after age 14. The State Department form that they used to fill out this list of residents, that indicates that even for the State Department in issuing a passport, it would not view that list of residences alone as dispositive. It states at the end that documentary proof of residence will be required. That's on page 282 of the administrative record. So even the State Department in determining whether to issue a passport to an individual would require more than just a list, even though the list is attested to and signed by the mother. They would require more than that. They require documentation, some documents, and there were none in this case. As I pointed out, the list is also contradicted by the mother's own testimony, as she said she was living in Mexico when she met her husband in 1950 and then still there in 51, and when she gave birth to her son, and the statement says she was living in the U.S. It's also internally inaccurate in that it says she was residing in the U.S. in 1970 through 1971, but it also says that she spent a year during that period in Mexico. So that raises the question of what does she consider to be her residence? If she spent a whole year in Mexico, how could she say she was residing in the U.S. during that time period? So I submit that a reasonable jury could not reach a verdict for Mr. Vidal based solely on the printed list of residences submitted by him, which was not confirmed by his mother's testimony, not supported by the documentary evidence, contradicted by the mother's testimony, and internally inaccurate. So there's no genuine issue of material fact here. The Court should proceed to decide the case and should find that Mr. Vidal did not meet his burden of showing that he was a citizen. Thank you, Counsel. Thank you, Your Honor. This Court in Vera-Viega has held that the degree of specificity in a testimony required depends on a number of factors, including the amount of time that has passed since the occurrence of the events being related and the provision of too much detail might in itself have been cause for suspicion and a credibility challenge. As such, had the mother been able to recall places of residence with the level of specificity the IJ was looking for, it would have discredited her consistent claim of literacy throughout the proceedings. In addition, this is a period dating anywhere between 30 to 50 years, and therefore the immigration judge should have listed the specificity requirements in line with the logic of Vera-Viega's. And I would submit that I would agree that there is conflicting testimony and the IJ had a problem, but we do have documentary evidence here to support the fact that she was here when she married because of the marriage certificate. The marriage certificate said that they were married here, and that was in 1970. So I would just submit that in terms of a timeline that we're having. We have between the time that she was 14 in 1950 to the time that the petitioner was born in 1970. So based on these elements and the arguments previously submitted, I would argue that we have presented a non-frivolous claim, which is ripe for, at minimum, an evidentiary hearing before the district court. Thank you, counsel.
judges: Canby, Noonan, Kleinfeld